## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ADIDAS AG, ADIDAS INTERNATIONAL
MARKETING B.V., and ADIDAS AMERICA, INC.,

    Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A,"

    Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, adidas AG, adidas International Marketing B.V., and adidas America, Inc., (collectively "Plaintiffs"), hereby sue Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiffs' trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating using the seller identities and domain names set forth on Schedule "A" hereto (the "Seller IDs and Subject Domain Names").  In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.  This is an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a) and (d), and The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs and Subject Domain Names.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff adidas AG ("adidas AG") is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 1120, D-91072 Herzogenaurach, Federal Republic of Germany.  adidas AG is currently, and for years has been, one of the world's leading manufacturers of athletic footwear and apparel, including products bearing the distinctive adidas Mark, Trefoil Mark, 3 Bars Logo, Three-Stripe Mark, THE BRAND WITH THE 3 STRIPES Mark, CLIMALITE Mark, CLIMAWARM Mark, CLIMACOOL Mark, BOOST Mark, STAN SMITH Mark, and CLIMACHILL Mark.

5.      Plaintiff adidas International Marketing B.V. ("adidas International") is a corporation organized and existing under the laws of Netherlands, having its principal place of business in the Netherlands.  adidas International is wholly owned by adidas AG and its affiliates.

6.      Plaintiff adidas America, Inc. ("adidas America") is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon, 97217.  adidas America is wholly owned by adidas AG and its affiliates, and within this country adidas America is a licensed distributor of adidas-branded merchandise, including goods bearing the distinctive adidas Mark, Trefoil Mark, 3 Bars Logo, Three-Stripe Mark, THE BRAND WITH THE 3 STRIPES Mark, CLIMALITE Mark, CLIMAWARM Mark, CLIMACOOL Mark, BOOST Mark, STAN SMITH Mark, and CLIMACHILL Mark. adidas AG, adidas International, and adidas America shall be referred to herein collectively as "adidas."

7.      Plaintiffs' trademarked goods are sold through various channels of trade within the State of Florida, including this district.  Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiffs' branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

8.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their ecommerce stores.  The natural and intended byproduct of Defendants'

actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks and the destruction of the legitimate market sector in which they operate.

9.     In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement such as field training guides and seminars. The exponential growth of counterfeiting over the Internet has created an environment that require companies, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill connected to Plaintiffs' brands.

## THE DEFENDANTS

10.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district through the simultaneous operation of the Internet e-commerce stores via Internet marketplace websites under the Seller IDs or the fully interactive Internet websites under the Subject Domain Names.

11.     Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

12.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiffs' trademarks as described herein using at least the Seller IDs and Subject Domain Names.

13.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods bearing counterfeits and infringements of one or more of Plaintiffs' trademarks to consumers within the United States and this district through Internet based e-commerce stores or commercial Internet websites using, at least, the Seller IDs and Subject Domain Names and additional names, seller identification aliases, and domain names not yet known to Plaintiffs.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

14.     Defendants have registered, established or purchased, and maintained the Seller IDs and Subject Domain Names.  Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names by providing false and/or misleading information to their domain name registrars or the Internet marketplace websites where they sell during the registration or maintenance process related to their respective Seller IDs and Subject Domain Names.  Upon information and belief, many Defendants have registered and/or maintained their Seller IDs and Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

15.     Defendants will likely continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

16.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiffs and others.

17.     Defendants' business names, i.e., the Seller IDs and Subject Domain Names, associated payment accounts, and any other alias seller identification names and domain names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs.  Moreover, Defendants are using Plaintiffs' famous names and/or trademarks to drive Internet consumer traffic to their e-commerce stores and websites operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### adidas's Trademark Rights

18.     adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, apparel, and sporting equipment.  adidas has used its famous and distinctive trademarks, **adidas**, , , Three-Stripe Mark, THE BRAND WITH THE 3 STRIPES Mark, CLIMALITE Mark, CLIMAWARM Mark, CLIMACOOL Mark, BOOST Mark, STAN SMITH Mark, and CLIMACHILL Mark (collectively, the "adidas Marks"), for many years in connection with the above-mentioned goods. The adidas Marks signify the quality and reputation of adidas products.

19.     adidas is the owner of multiple trademark registrations for the adidas Marks, including the following valid trademark registrations, issued by the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
|  | 0,870,136 | May 27, 1969 | IC25. Athletic Training Suits. |
| ADIDAS | 0,891,222 | May 19, 1970 | IC25. sport shoes namely, track and field shoes, baseball, boxing, football, skating, golf, and soccer shoes; sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
|  | 0,973,161 | November 20, 1973 | IC 018. tote bags. IC 25. specific purpose athletic shoes; general purpose sport shoes, sportswear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, and gloves. |
| adidas | 1,300,627 | October 16, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Boots, Shoes, Slippers. |
|  | 1,310,140 | December 18, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Rain Suits, Ski Suits, Jump Suits, Boots, Shoes, Slippers. |
| THE BRAND WITH THE 3 STRIPES | 1,674,229 | February 4, 1992 | IC 025. boots, slippers, sandals; shoes, boots and after ski boots for hiking and trekking, athletic shoes and general-purpose sports shoes. |
| CLIMALITE | 1,809,301 | December 7, 1993 | IC 025. Shirts. |
|  | 2,016,963 | November 19, 1996 | IC 025. Sports and leisure wear, namely jackets. |

| | | | |
|---|---|---|---|
|  | 2,058,619 | May 6, 1997 | IC 025. Sports and leisure wear, namely shirts. |
|  | 2,278,589 | September 21, 1999 | IC 025. athletic and leisure footwear. |
|  | 2,278,591 | September 21, 1999 | IC 25. sports and leisure wear, namely shorts. |
|  | 2,284,308 | October 12, 1999 | IC 025. sports and leisure wear, namely pants. |
| CLIMAWARM | 2,290,958 | November 9, 1999 | IC 025. Clothing, namely, sweaters, vests, sweat pants, jackets, caps, [ scarves and gloves ]. |
|  | 2,411,802 | December 12, 2000 | IC 018. All purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks.<br>IC 025. Sports and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits; boots, sandals, specific purpose athletic shoes and general all purpose sports shoes.<br>IC 028. Sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards. |
| CLIMACOOL | 2,651,581 | November 19, 2002 | IC 025. Clothing, namely, footwear, sport shoes, headwear, shirts, T-shirts, jerseys, underwear, swimwear, shorts, pants, skirts, sweaters, caps, hats, visors, warm up suits, rain suits, ski suits, jumpsuits, boots, sandals, sweat shirts, jackets, uniforms, wrist bands and head bands, gloves and socks. |
|  | 3,029,127 | December 13, 2005 | IC 025. Clothing, namely, T-Shirts, sweatshirts, jackets and coats. |
|  | 3,029,129 | December 13, 2005 | IC 025. Footwear. |

| | 3,029,135 | December 13, 2005 | IC 025. Footwear. |
|---|---|---|---|
| | 3,104,117 | June 13, 2006 | IC 009. Optical apparatus and instruments, namely, eyeglasses and sunglasses.<br>IC 014. Horological and chronometric instruments, namely, watches<br>IC 018. Leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use, namely, handbags, tote bags, waist packs, overnight bags, backpacks, knapsacks and beach bags; trunks; traveling bags for general and sport use; leather and imitations of leather and goods made from these materials, namely, wallets, briefcases.<br>IC 025. Sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, skorts, dresses, blouses, shirts, T-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes. |
| **BOOST** | 3,580,958 | February 24, 2009 | IC 025. Clothing, namely, shirts; footwear |
| **STAN SMITH** | 3,590,187 | March 17, 2009 | IC 025. Footwear. |
| CLIMACHILL | 4,585,788 | August 12, 2014 | IC 025. Footwear; apparel, namely, shirts, tops, shorts. |

The adidas Marks are used in conjunction with the manufacture and distribution of quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the adidas Marks are attached hereto as Composite Exhibit "1."

20.     The adidas Marks have been used in interstate commerce to identify and distinguish adidas products for an extended period of time and serve as symbols of adidas's quality, reputation, and goodwill.

21.     The adidas Marks are well-known and famous and have been for many years. adidas has expended substantial time, money and other resources developing, advertising and otherwise promoting the adidas Marks.  Specifically, adidas has used the adidas Marks in connection with its frequent sponsorship of sports tournaments and organizations, as well as professional athletes and collegiate sports teams.  For example, adidas has long-term relationships with the University of Nebraska, and the University of Louisville.  Among many others, NBA stars Derrick Rose, James Harden, and Andrew Wiggins, NFL stars Von Miller, Aaron Rodgers, Dak Prescott, NHL star Sidney Crosby, baseball player Kris Bryant, and soccer stars David Beckman and Lionel Messi all are sponsored by adidas.  For many years, adidas has been a sponsor of the World Cup soccer tournament, has sponsored the world-famous Boston Marathon for more than a decade, and has sponsored many other events, teams, and individuals. Prominent use of the adidas Marks in connection with these sponsorship activities has further enhanced the adidas Marks' recognition and fame.  The adidas Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

22.     adidas has extensively used, advertised, and promoted the adidas Marks in the United States in association with the sale of quality products.  adidas has spent hundreds of millions of dollars promoting the adidas Marks and products bearing the adidas Marks.  In recent

years, annual sales of products bearing the adidas Marks have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.

23.     The adidas Marks have achieved secondary meaning as identifiers of quality goods as a result of adidas's advertisement, promotion, and sale of such goods thereunder.

24.     As a result of adidas's efforts, members of the consuming public readily identify merchandise bearing or sold under the adidas Marks, as being quality merchandise sponsored and approved by adidas.

25.     adidas has carefully monitored and policed the use of the adidas Marks and has never assigned or licensed the adidas Marks to any Defendant in this matter.

26.     Genuine goods bearing the adidas Marks are widely legitimately advertised and promoted by adidas, authorized distributors and unrelated third parties via the Internet.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to adidas's overall marketing and consumer education efforts.  Thus, adidas expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow adidas and its authorized retailers to fairly and legitimately educate consumers about the value associated with the adidas Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and websites are indexed on search engines and compete directly with adidas for space in the search results.

**<u>Defendants' Infringing Activities</u>**

27.     In blatant disregard of Plaintiffs' rights, Defendants are promoting and advertising, distributing, selling and/or offering for sale goods in interstate commerce that bear counterfeit and confusingly similar imitations of the adidas Marks (the "Counterfeit Goods")

through at least the Internet based e-commerce stores or commercial Internet websites operating under the Seller IDs and Subject Domain Names.  Specifically, Defendants are using the adidas Marks to initially attract online consumers and drive them to Defendants' ecommerce stores operating under the Seller IDs and Subject Domain Names.  Defendants are using identical copies of one or more of the adidas Marks for different quality goods.  Plaintiffs have used the adidas Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

28.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods.  Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use the adidas Marks.  The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores and websites are genuine goods originating from, associated with, and/or approved by Plaintiffs.

29.     Defendants advertise their e-commerce stores and websites, including their Counterfeit Goods offered for sale to the consuming public via at least the e-commerce stores and websites under the Seller IDs and Subject Domain Names.  In so advertising their stores and products, Defendants improperly and unlawfully use one or more of the adidas Marks without Plaintiffs' permission.

30.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, employing and benefitting from substantially similar,

12

advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the adidas Marks.  Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names or trademarks in order to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the adidas Marks, and/or (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

31.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

32.     At all times relevant hereto, Defendants in this action have had full knowledge of Plaintiffs' ownership of the adidas Marks, including their, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

33.     Defendants' use of the adidas Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

34.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputations.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

35.     Defendants' above identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' genuine goods and Defendants' Counterfeit Goods, which there is not.

36.     Moreover, at least Defendant Number 102 has registered its Subject Domain Name, using marks that are nearly identical and/or confusingly similar to at least one of Plaintiffs' Marks, (the "Cybersquatted Subject Domain Name").

37.     Defendant Number 102 has registered and/or used the Cybersquatted Subject Domain Name with the bad faith intent to profit from Plaintiffs' Marks.

38.     Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks.  Further, Plaintiffs' Marks have never been assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Name.

39.     Upon information and belief, Defendant Number 102 has provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Name, or has intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Name.

14

40.     Defendant Number 102 has never used the Cybersquatted Subject Domain Name in connection with a bona fide offering of goods or services.

41.     Defendant Number 102 has not made any bona fide non-commercial or fair use of Plaintiffs' Marks on a website accessible under the Cybersquatted Subject Domain Name.

42.     Defendant Number 102 has intentionally incorporated Plaintiffs' Marks in its Cybersquatted Subject Domain Name to divert consumers looking for Plaintiffs' Internet websites to its own Internet websites for commercial gain.

43.     Given the visibility of Defendants' various e-commerce stores and websites and the similarity of their actions, it is clear Defendants are either related, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate as a result of Defendants' concurrent actions.

44.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

45.     Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and Subject Domain Names and any other alias seller identification names or domain names being used and/or controlled by them.

46.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

47.     Plaintiffs have no adequate remedy at law.

48.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the adidas Marks.  If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

49.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

50.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 49 above.

51.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the adidas Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and/or sale of the Counterfeit Goods.

52.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products using counterfeits and/or infringements of one or more of the adidas Marks.  Defendants are continuously infringing and inducing others to infringe the adidas Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing branded goods.

53.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

16

54.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

55.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the adidas Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

56.     Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

### COUNT II - FALSE DESIGNATION OF ORIGIN
### PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

57.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 49 above.

58.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of one of the adidas Marks have been widely advertised and offered for sale throughout the United States via the Internet.

59.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the adidas Marks are virtually identical in appearance to Plaintiffs' genuine goods.  However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

60.     Defendants have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and

17

representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

61.     Defendants have authorized infringing uses of one or more of the adidas Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

62.     Additionally, many Defendants are using counterfeits and infringements of one or more of the adidas Marks in order to unfairly compete with Plaintiffs and others for space within organic search engine and social media results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

63.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

64.     Plaintiffs have sustained indivisible injury and damage caused by Defendants' concurrent conduct, and absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and each Plaintiff will continue to suffer irreparable injury to their goodwill and business reputations, as well as monetary damages.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
## UNDER §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
(Against Defendant Number 102 only)

65.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 49 above.

66.     Defendant Number 102 has acted with the bad faith intent to profit from the adidas Marks and the goodwill associated with the adidas Marks by registering and using the Cybersquatted Subject Domain Name.

67.     The adidas Marks were distinctive and famous at the time Number 102 registered the Cybersquatted Subject Domain Name.

68.     The Cybersquatted Subject Domain Name is identical to, confusingly similar to or dilutive of one or more of the adidas Marks.

69.     Defendant Number 102's conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in the adidas Marks.  At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiffs' rights.

70.     Defendant Number 102's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

71.     Plaintiffs have no adequate remedy at law and have each suffered and will continue to suffer irreparable injury and damage due to the above described activities of Defendant Number 102 if it is not enjoined

## COUNT IV - COMMON LAW UNFAIR COMPETITION

72.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 49 above.

73.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using or bearing marks which are virtually identical to one or more of the adidas Marks in violation of Florida's common law of unfair competition.

74.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing counterfeits and infringements of one or more of the adidas Marks.  Defendants are also using counterfeits and infringements of one or more of the adidas Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

75.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' ecommerce stores as a whole and all products sold therein by their use of the adidas Marks.

76.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

77.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 49 above.

78.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods

bearing one or more of the adidas Marks.  Plaintiffs are the owners of all common law rights in and to the adidas Marks.

79.     Specifically, Defendants are promoting and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of the adidas Marks.

80.     Defendants infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the adidas Marks.

81.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

82.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary restraining order, as well as preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the adidas Marks; from using the adidas Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design which may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with

Plaintiffs, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the adidas Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' names or trademarks; and from otherwise unfairly competing with Plaintiffs.

      b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the adidas Marks.

      c.      Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act and the Court's inherent authority, that, upon Plaintiffs' request, the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names, and any other domains names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the adidas Marks, on

Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names used by Defendants, to the IP addresses where the associated websites are hosted.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names, and any other domain names used by Defendants to engage in their counterfeiting of the adidas Marks, to Plaintiffs' control so they may no longer be used for illegal purposes.

e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell and/or selling goods bearing counterfeits and infringements of the adidas Marks.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators for the Seller IDs, who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendants' respective Seller ID.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove from the multiple platforms, which include, inter alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of the adidas Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiffs' request, any other listings and images of goods bearing counterfeits and/or infringements of the adidas Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the adidas Marks.

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the adidas Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

i.      Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per

each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        j.     Entry of an order requiring Defendant Number 102 to account to and pay Plaintiffs for all profits and damages resulting from Defendant Number 102's cybersquatting activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count III, that Plaintiffs be awarded statutory damages from Defendant Number 102 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

        k.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

        l.     Entry of an order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs and Subject Domain Names or other alias seller identification or e-commerce store names, domain names, and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

        m.     Entry of an award of pre-judgment interest on the judgment amount.

        n.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: June 11, 2020.

Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**