# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 20-61146-CIV-RUIZ

ADIDAS AG, ADIDAS INTERNATIONAL
MARKETING B.V., and ADIDAS
AMERICA, INC.,

      Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

_____/

## PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiffs, adidas AG, adidas International Marketing B.V., and adidas America, Inc. ("Plaintiffs"), by and through their undersigned counsel, hereby move this Honorable Court for an entry of final default judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").[1] In support thereof, Plaintiffs submit the following Memorandum of Law.

## I.    INTRODUCTION

Plaintiffs initiated this action against Defendants through the filing of their Complaint and subsequent Amended Complaint for trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law

---

[1] Plaintiffs have resolved their claims with Defendant Numbers 5, 7, 10, 12, 15, 19, 20, 21, 23, 24, 25, 29, 30, 33, 34, 37, 40, 42, 54, 95, and 114, have tentatively resolved their claims with Defendant Numbers 44, 48, 49, 51, 52, 55, 56, and 57, and are engaged in expedited settlement discussions to resolve this matter amicably with Defendant Number 59. (See Declaration of Virgilio Gigante in Support of Motion for Entry of Final Default Judgment Against Defendants ("Gigante Decl. in Support of FDJ") ¶ 1, n.1, filed herewith.)  Plaintiffs have filed a Motion for an Extension of Time to File Motion for Default Final Judgment or Notice of Joint Liability as to these Defendants [ECF No. 40], which is currently pending before the Court. (Id.)  Additionally, Defendant Number 116 has been voluntarily dismissed from this action [ECF No. 29]. (Id.) Accordingly, Plaintiffs' Motion only seeks judgment against the remaining Defendants identified on Schedule "A" hereto. (Id.)

trademark infringement. Defendants are in default, and the prerequisites for a default judgment have been met.  As relief, Plaintiffs seek default judgment finding Defendants liable on all counts of Plaintiffs' Amended Complaint.[2]  Plaintiffs pray such judgment includes the entry of a permanent injunction and an award of statutory damages to Plaintiffs for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c) and cybersquatting pursuant to 15 U.S.C. § 1117(d).  Plaintiffs also request the Court order the listings and associated images of goods bearing counterfeits and/or infringements of Plaintiffs' trademarks used by Defendants be permanently removed and the goods of each Defendant bearing one or more of Plaintiffs' trademarks held by the marketplace platforms be surrendered to Plaintiffs to ensure the associated e-commerce marketplace stores, and websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiffs' trademarks and infringing upon Plaintiffs' rights.  Plaintiffs further request the Court cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiffs' trademarks and infringing upon Plaintiffs' rights.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Rights.

Plaintiffs own all rights in and to the federally registered trademarks listed in Paragraph 4 and Schedule "B" (the "adidas Marks") of the Declaration of Mia Nidia Gutierrez in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets[3] ("Gutierrez Decl. in Support of TRO"), which are used in connection with the manufacture and distribution of quality goods in the categories identified therein. (See Gutierrez Decl. in Support of TRO [ECF No. 6-2] ¶¶ 4-5.)

The adidas Marks are symbols of Plaintiffs' quality, reputations, and goodwill and have never been abandoned. (See Gutierrez Decl. in Support of TRO ¶¶ 6-11.)  Moreover, Plaintiffs

---

[2] Plaintiffs are not requesting the Court award damages against Defendants jointly and severally; therefore, there is no possibility of inconsistent liability.

[3] Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Application for TRO") together with supporting declarations and exhibits [ECF No. 6] are incorporated herein by reference.

have expended substantial time, money, and other resources developing, advertising, and otherwise promoting their trademarks. (Id. ¶ 8.)  Accordingly, the adidas Marks all qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Furthermore, Plaintiffs have extensively used, advertised, and promoted the adidas Marks in the United States in association with quality products, and have carefully monitored and policed the use of the trademarks. (See Gutierrez Decl. in Support of TRO ¶¶ 6-11.)  As a result, members of the consuming public readily identify products bearing the adidas Marks as being quality merchandise sponsored and approved by Plaintiffs, and the adidas Marks have achieved secondary meaning as identifiers of quality products.

### B.  Defendants' Infringing Acts.

As alleged by Plaintiffs, admitted by default, and established by the evidence submitted herewith, Defendants operate and control the Internet based e-commerce stores established via third-party marketplace platforms under their seller identification names and/or commercial Internet websites operating under the domain names set forth on Schedule "A" hereto (the "Seller IDs and Subject Domain Names").  As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale or sale of goods bearing counterfeit and infringing trademarks which are exact copies of one or more of the adidas Marks (the "Counterfeit Goods"). (See Am. Compl. ¶¶ 10-17, 27; see also Gutierrez Decl. in Support of TRO ¶¶ 16-17; Declaration of Kathleen Burns in Support of Plaintiffs' Application for TRO ("Burns Decl. in Support of TRO") [ECF No. 6-4] ¶ 4; Declaration of Virgilio Gigante in Support of Application for TRO ("Gigante Decl. in Support of TRO") [ECF No. 6-3] ¶ 2.)

Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiffs' ownership of the adidas Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith. (Am. Compl. ¶ 32.)  Defendants do not have, nor have they ever had, the right or authority to use the adidas Marks for any purpose. (See Gutierrez Decl. in Support of TRO ¶¶ 13, 16.)  However, despite their known lack of authority to do so, Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their Counterfeit Goods via their respective Seller IDs and Subject Domain Names. (See Am. Compl. ¶ 27; see also Gutierrez Decl. in Support of TRO ¶¶  13-17; Burns Decl. in Support of TRO ¶ 4; Gigante Decl. in Support of TRO ¶ 2; see also relevant web page captures from Defendants' Internet

3

based e-commerce stores, and commercial Internet websites operating under the Seller IDs and Subject Domain Names displaying Plaintiffs' branded items offered for sale attached as Comp. Ex. "1" to the Burns Decl. in Support of TRO [ECF No. Nos. 6-5 through 6-10].)

       Plaintiffs' evidence, obtained as a result of their investigation of Defendants, clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing counterfeits of the adidas Marks.  Plaintiffs' counsel retained Invisible Inc, a licensed private investigation firm, to investigate the promotion and sale of counterfeit and infringing adidas branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit adidas branded merchandise through the Seller IDs and Subject Domain Names. (Gutierrez Decl. in Support of TRO ¶ 14; Burns Decl. in Support of TRO ¶ 3; Gigante Decl. in Support of TRO ¶ 2.)  Invisible Inc accessed each of the e-commerce stores, and commercial websites operating under Defendants' Seller IDs and Subject Domain Names, placed an order from each of the Seller IDs and Subject Domain Names for the purchase of various products – all bearing counterfeits of at least one of the adidas Marks[4]– and requested each product to be shipped to its addresses in the Southern District of Florida.  (See Burns Decl. in Support of TRO ¶ 4 and Comp. Ex. "1" thereto.)  Each order was processed entirely online, and following the submission of each order, Invisible Inc finalized payment[5] for the products ordered via Defendants'

---

[4] Some Defendants blurred-out and/or physically altered images of Plaintiffs' Marks on the products being offered for sale via their respective e-commerce stores.  (See Burns Decl. in Support of TRO ¶ 4, n.1.)  Upon receipt of the items purchased from these Defendants, Invisible visually inspected the items and verified that each item did in fact bear one or more of the adidas Marks in their entirety. (See id.) Photographs showing the items Invisible received bearing the adidas Marks in their entirety were sent Plaintiffs' representative for review and are included in Comp. Ex. "1" to the Declaration of Kathleen Burns. (See id.)

[5]   Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding money to Defendants' coffers. (See Burns Decl. in Support of TRO ¶ 4 n.2; Gaffigan Decl. in Support of TRO ¶ 2, n.1.)

respective payment accounts and/or payee,[6] as identified on Schedule "A" hereto.[7]  (See id.)  At the conclusion of the process, the detailed web page captures and images of products ordered via each Defendants' Seller IDs and Subject Domain Names, together with photographs of some of the products received, were sent to Plaintiffs' representative for inspection. (See Burns Decl. in Support of TRO ¶ 4; Gigante Decl. in Support of TRO ¶ 2; Gutierrez Decl. in Support of TRO ¶ 15.)

Plaintiffs' representative, who is trained to identify the distinctions between genuine versions of Plaintiffs' branded merchandise and counterfeit copies of the same, reviewed and visually inspected the adidas-branded goods purchased by Invisible Inc via each of the Seller IDs and Subject Domain Names by reviewing the e-commerce stores, and commercial websites operating under the Seller IDs and Subject Domain Names, or the detailed web page captures

---

[6]  Defendant Numbers 1-4 operate via the non-party Internet marketplace platform, Amazon.com. Amazon.com is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed. (See Gaffigan Decl. ¶ 5; Burns Decl. in Support of TRO ¶ 4 n.3.)

Defendant Numbers 5-41 operate via the non-party Internet marketplace platform, DHgate.com, and have their payments processed on their behalf via DHgate.com's third-party payment platform, DHpay.com. (See Gigante Decl. in Support of TRO ¶ 6; Burns Decl. in Support of TRO ¶ 4, n.3.) The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (See Gigante Decl. in Support of TRO ¶ 6.)

Defendant Numbers 43-60 operate via the non-party e-commerce marketplace platform Joom.com, which is operated by SIA Joom. "Joom USA Inc" was identified as the PayPal payee for the orders from Defendant Numbers 43-60, which is the aggregate PayPal account for purchases made via Joom.com. (See Gigante Decl. in Support of TRO ¶ 7; Burns Decl. in Support of TRO ¶ 4, n.3.)

Defendant Numbers 61-92 operate via the non-party e-commerce marketplace platform, Wish.com ("Wish"), which is operated by ContextLogic Inc. ("ContextLogic"). The payee for the orders placed from Defendants 61-92's Wish.com Seller IDs identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made via Wish.com. (See Gigante Decl. in Support of TRO ¶ 8; Burns Decl. in Support of TRO ¶ 4 n.3.)

Defendant Numbers 93-119 use money transfer and retention services with PayPal. (See Gaffigan Decl. ¶ 9; Burns Decl. in Support of TRO ¶ 4 n.4.)

[7]  Additional contact email addresses for Defendants are also identified on Schedule "A" hereto. (See Burns Decl. in Support of TRO ¶ 4 n.4; Gaffigan Decl. ¶ 3.)

and images of the products bearing the adidas Marks, together with photographs of certain received goods, and determined the products were non-genuine, unauthorized versions of Plaintiffs' goods. (See Gutierrez Decl. in Support of TRO ¶¶ 16-17.)

### C.     Procedural Background

On June 11, 2020, Plaintiffs filed their Complaint and on July 7, 2020 their Amended Complaint for Damages and Injunctive Relief against Defendants.  On June 12, 2020, Plaintiffs filed their Application for TRO [ECF No. 6].  On June 16, 2020, this Court entered a Sealed Order Granting Plaintiffs' *Ex Parte* Temporary Restraining Order, [ECF No. 9], and subsequently converted the temporary restraining order into a preliminary injunction on July 14, 2020, [ECF No. 31].  The Temporary Restraining Order and Preliminary Injunction required, *inter alia*, Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., SIA Joom, which operates the Joom.com platform ("Joom"), ContextLogic, Inc., which operates the Wish.com website ("ContextLogic") and PayPal, Inc. ("PayPal"), and their related companies and affiliates to identify and restrain all funds in Defendants' associated payment accounts, and divert those funds to a holding account for the trust of the Court.  Subsequently, Plaintiffs' counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order and restrained Defendants' funds. (See Gigante Decl. in Support of FDJ ¶ 2, filed herewith.)

On June 12, 2020, Plaintiffs filed their *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants, [ECF No. 7],[8] which the Court granted on June 16, 2020 [ECF No. 10], authorizing Plaintiffs to serve the summonses, Amended Complaint, and all subsequent filings in this matter upon Defendants via electronic mail ("e-mail")  or via website posting on Plaintiffs' serving notice website.  Pursuant to the Court's Order, Plaintiffs served Defendants with their respective Summons and a copy of the Amended Complaint via e-mail and website posting on July 7, 2020. (See Gigante Decl. in Support of FDJ ¶ 4; Proof of Service [ECF No. 28].)  The time allowed for Defendants to respond to the Amended Complaint has expired. (Gigante Decl. in Support of FDJ ¶ 5.)  Defendants have not been granted any extension of time

---

[8] Plaintiffs' *Ex Parte* Motion for Alternate Service, together with supporting declaration and exhibit, are incorporated herein by reference.

to respond, nor have they served or filed an Answer or other formal response. (Id. at ¶ 6.)  To Plaintiffs' knowledge, none of the Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. (Id. at ¶ 7.)

On August 5, 2020, Plaintiffs filed their Request for Clerk's Entry of Default [ECF No. 32] as to certain Defendants, and the Clerk subsequently entered Default as to those Defendants for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [ECF No. 33, 37].  On September 23, 2020, the Court entered an Order directing the Clerk of the Court to enter Default against remaining Defendants [ECF No. 38], and the Clerk entered Default as to the remaining Defendants on September 24, 2020 [ECF No. 39] Plaintiffs now move the Court to grant Final Default Judgment against Defendants, and submits this Motion for Entry of Final Default Judgment in compliance with the Court's September 23, 2020 Order requiring the same [ECF No. 38].

## III.   ARGUMENT

### A.   Default Judgment Should be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Personal jurisdiction over Defendants and venue in this district are proper under 28 U.S.C. § 1391 as Defendants direct business activities toward consumers within this district and cause harm to Plaintiffs' businesses through the Internet based e-commerce stores, and commercial Internet website operating under the Seller IDs and Subject Domain Names.  (See Am. Compl. ¶¶ 1-3, 10, 13, 27.)

#### 1.   Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). See FED. R. CIV. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's amended complaint, other than those related to damages, will be taken as true. PetMed Express, Inc. v. Medpets.com, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987)). In this case, the Amended Complaint, pleadings, and declaration filed in support of Plaintiffs' Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

7

### 2.      Factual Allegations Establish Defendants' Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."  In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate (1) they had prior rights to the mark at issue and (2) Defendants had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs.  15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

Plaintiffs' Amended Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Plaintiffs must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit."  Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed.Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006).  See 15 U.S.C. § 1125(d).

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.').  Further, the test to determine trademark

infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiffs' Amended Complaint, including specifically those pled in Paragraphs 10-17, 27-36, 51-54, 58-61, 64-68, 66-70, 73-75, and 78-80 [ECF No. 15], properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiffs' Amended Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Amended Complaint. (See Gutierrez Decl. in Support of TRO ¶¶ 13-16; Burns Decl. in Support of TRO ¶ 4.)  Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

### B.    Plaintiffs' Requested Relief Should be Granted.

#### 1.    Entry of a Permanent Injunction is Appropriate.

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Moreover, even in a default judgment setting, injunctive relief is available.  See e.g., PetMed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction.  See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")  Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiffs' intellectual property rights, including the adidas Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship

favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93 (2006).  As demonstrated herein, and based upon the issuance of the temporary restraining order and preliminary injunction entered in this matter, Plaintiffs have clearly carried their burden on each of the four factors, warranting permanent injunctive relief, because Defendants have unlawfully used Plaintiffs' trademarks and associated goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiffs' reputations, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiffs' trademarks.  The facts alleged in Plaintiffs' Amended Complaint, substantiated by the evidence submitted herewith, shows Defendants are "continuously infringing and inducing others to infringe" the adidas Marks by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the adidas Marks. (See Am. Compl. ¶ 52; see also Gutierrez Decl. in Support of TRO ¶¶ 13-16; Burns Decl. in Support of TRO ¶ 4; see generally Defendants' Seller IDs and Subject Domain Names attached as Comp. Ex. 1 to the Burns Decl. in support of TRO.)

Plaintiffs are clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (Gutierrez Decl. in Support of TRO ¶ 21.)  In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  In any event, Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Am. Compl. ¶ 48.)  Defendants have defaulted upon Plaintiffs' factual allegations in that respect.

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to use the adidas Marks in connection with the operation of the Internet based e-commerce stores, and websites under the Seller IDs and Subject Domain Names because Plaintiffs will have no control of the quality of what appear to be their products in the marketplace.  An award of money damages alone will not cure the injury to Plaintiffs' reputations and goodwill which will

result if Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiffs' trademarks, whereas Plaintiffs face hardship from loss of sales and their inability to control their reputations.  In reality, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' products.  See Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.")  Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiffs' property interest in the adidas Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendants through default, (i) the Seller IDs and Subject Domain Names, and associated payment accounts are essential components of Defendants' online activities, and (ii) the Seller IDs and Subject Domain Names themselves are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. (See Am. Compl. ¶ 17.)  Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Names should be ordered transferred by Defendants, their registrar, and/or registry, to Plaintiffs' control where they may be disabled from further use as a platform for the sale of counterfeit goods. Additionally, all listings and associated images of goods bearing counterfeits and/or infringements of the adidas Marks via the e-commerce marketplace stores operating under the Seller IDs, including but not limited to the listings and associated images corresponding to the Amazon Standard Identification Numbers ("ASINs")[9]

---

[9] An ASIN is a unique 10-digit alphanumeric identifier Amazon assigns to each product.  The ASIN for the Plaintiffs' branded product at issue was obtained either from the Product Information / Description segments or the URLs of the infringing items, all of which are identified on Schedule "A" hereto. (See Burns Decl. in Support of TRO in Support of TRO at n.6 and Schedule "A" thereto.) Sellers can create a variational relationship between products in regards to name, size/count, color, style, scent, etc. When doing so, the ASIN identified in the

identified on Schedule "A" hereto, and any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale, and/or sell goods bearing and/or using counterfeits and/or infringements of the adidas Marks, should be permanently removed by the Internet marketplace website and operator and/or administrator.  Moreover, the goods of each Defendant bearing one or more of the adidas Marks that are in the inventory, possession, custody or control of the Internet marketplace website operators and/or administrators, should be surrendered to Plaintiffs.   Absent the transfer of the Subject Domain Names and the removal of the listings and images of goods bearing counterfeits and/or infringements of the adidas Marks, Defendants will remain free to continue infringing Plaintiffs' trademarks with impunity, will continue to benefit from the Internet traffic to those websites, and e-commerce stores built through the unlawful use of Plaintiffs' trademarks, and will continue to defraud the public by their illegal activities. Further, the surrender of the counterfeit merchandise bearing the adidas Marks from Internet marketplace websites would permanently remove these counterfeit goods from the stream of commerce to further protect the public from being defrauded by Defendants' worthless items.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name.  See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context.  See, e.g., Philip Morris USA v. Otamedia, Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the

---

Product Information / Description segments represents the core product and a different ASIN may be assigned based on variations thereof, as identified in the URLs. (See id.)

exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to Plaintiffs in part under authority of 15 U.S.C. § 1116(a)). This Court, and others, have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[10]

Defendants have created an Internet-based counterfeiting and infringement scheme and are profiting from the deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court should permanently prohibit Defendants from conducting their unlawful activities and eliminate the means by which Defendants conduct their unlawful activities by transferring the subject domain names and by requiring their listings and associated images be removed to further prevent them from being used for the sale of counterfeit goods.[11]

---

[10] See e.g., Chanel, Inc. v. 7creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Apr. 6, 2020) (awarding transfer of domain names at issue as part of grant of permanent injunction); Goyard St-Honore v. goyard.org.uk, Case No. 19-cv-62926-RAR (S.D. Fla. Feb. 24, 2020) (same); Louis Vuitton Malletier v. Individuals, P'ships, and Unincorporated Ass'ns, Case No. 19-cv-61015-RAR (S.D. Fla. Aug. 22, 2019) (same); adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns, Case No. 19-cv-61180-RAR (S.D. Fla. Sept. 23, 2019) (same); adidas AG v. adidascitycup.com, Case No. 19-cv-61353-RAR (S.D. Fla. Aug. 14, 2019) (same); Chanel, Inc. v. fashionbestchanel.com, Case No. 19-cv-60991-RAR (S.D. Fla. June 29, 2019) (same). See also Richemont Int'l SA v. swisscartier.cn, No. 18-60662-Civ, 2018 U.S. Dist. LEXIS 221656 (S.D. Fla. Nov. 15, 2018) (Scola, R.) (same); adidas AG v. 2017nmdshoes.us, No. 18-cv-61176, 2018 U.S. Dist. LEXIS 216790 (S.D. Fla. July 31, 2018) (Bloom, B.) (same); Cartier Int'l A.G. v. replicapaneraiwatches.cn, No. 17-cv-62401, 2018 U.S. Dist. LEXIS 188943 (S.D. Fla. Apr. 2, 2018) (Moore, K.) (same); Under Armour, Inc. v. 51nfljersey.com, No. 13–62809–CIV, 2014 U.S. Dist. LEXIS 56475 (S.D. Fla. Apr. 23, 2014) (Rosenbaum, J.) (same). Accord Gucci Am., Inc. v. The Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60397-WPD (S.D. Fla. July 8, 2020) (same); adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns, 19-cv-63109-RKA (Mar. 31, 2020) (same); Chanel, Inc. v. aozhu9284, Case No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same).

[11] See e.g., Fendi S.R.L. v. Joe Bag, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (order requiring, inter alia, Internet marketplace website operators permanently remove all listings and associated images of the products bearing counterfeits and/or infringements of plaintiff's trademarks and cease fulfillment of and sequester all goods in its inventory, possession, custody, or control that bear one or more of the plaintiff's trademarks at issue and surrender the same to plaintiff); adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns, Case No. 19-cv-61180-RAR (S.D. Fla. Sept. 23, 2019) (Order requiring, inter alia, Internet marketplace website operators permanently remove all listings and associated images of goods bearing counterfeits and/or infringements of plaintiff's trademarks via

2.    **Damages as to Count I for Trademark Counterfeiting  and Infringement.**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs elect to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to set an amount of statutory damages. PetMed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990).  Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.").  Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)  See also PetMed Express, Inc., 336 F. Supp. 2d at

---

defendants' e-commerce stores); Louis Vuitton Malletier v. Individuals, P'ships, and Unincorporated Ass'ns, Case No 19-cv-61015-RAR (S.D. Fla. Aug. 22, 2019) (same); Abercrombie & Fitch Trading Co., v. artemis gesdy, Case No. 19-cv-60287-RAR (S.D. Fla. July, 9, 2019) (same); Fendi, S.r.l. v. socjmkfn, Case No. 18-cv-63101-RAR (S.D. Fla. May 20, 2019) (order requiring, *inter alia*, Internet marketplace website operators permanently remove all listings and associated images of the products bearing counterfeits and/or infringements of plaintiff's trademarks and cease fulfillment of and sequester all goods in its inventory, possession, custody, or control that bear one or more of the plaintiff's trademarks at issue and surrender the same to plaintiff). See also Malletier v. Individuals, P'ship, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same). Accord Gucci Am., Inc. v. The Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60397-WPD (S.D. Fla. July 8, 2020) (same); adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns, 19-cv-63109-RKA (Mar. 31, 2020) (same); Chanel, Inc. v. aozhu9284, Case No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); MPL Communications Limited v. 1230h0h Store, Case No. 19-cv-62891-BB (S.D. Fla. Feb. 12, 2020) (same).

1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").  This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award.  PetMed Express, Inc., 336 F. Supp. 2d at 1220.  A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights.  See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).  Willfulness may also be inferred from the defendant's default.  See PetMed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true).  In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The adidas Marks are renowned worldwide as identifiers of quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiffs' goodwill.  Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiffs' reputations, to Plaintiffs' detriment.  See PetMed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes Defendants intentionally copied one or more of the adidas Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputations.  In addition, Defendants defaulted on Plaintiffs' allegations of willfulness. (Am. Compl. ¶ 34.)  See Arista Records, Inc. 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default.)  As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in

fact counterfeits of at least one of the adidas Marks.  (See Am. Compl. ¶¶ 27, 52; see also Gutierrez Decl. in Support of TRO ¶ 17; Burns Decl. in Support of TRO ¶ 4 and Comp. Ex. 1.) And, as noted above, based upon the evidence Plaintiffs have presented, it is reasonable to infer Defendant's infringement was willful. Based on the above considerations, Plaintiffs respectfully suggest the Court award statutory damages in the amount of $1,000,000.00 against each Defendant.

Plaintiffs' requested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c).  Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; PetMed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to Plaintiffs' request herein.[12]

### 3.    Damages as to Count II for False Designation of Origin.

Plaintiffs' Amended Complaint also sets for a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II). As to Count II,

---

[12] See, e.g., Fendi S.R.L. v. Joe Bag, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (awarding Plaintiff $1,000,000.00 against each Defendant); Chanel, Inc. v. 7creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Apr. 6, 2020) (same); Goyard St-Honore v. goyard.org.uk, Case No. 19-cv-62926-RAR (S.D. Fla. Feb. 24, 2020) (same); Louis Vuitton Malletier v. The Individuals, P'ships, and Unincorporated Ass'ns Identified, Case No 19-cv-61015-RAR (S.D. Fla. Aug. 22, 2019) (same); adidas AG v. adidascitycup.com, Case No. 19-cv-61353-RAR (S.D. Fla. Aug. 14, 2019) (same); Abercrombie & Fitch Trading Co., v. artemis gesdy, Case No. 19-cv-60287-RAR (S.D. Fla. July, 9, 2019) (same); Chanel, Inc. v. fashionbestchanel.com, Case No. 19-cv-60991-RAR (S.D. Fla. June 29, 2019) (same); Fendi, S.r.l. v. socjmkfn, Case No. 18-cv-63101-RAR (S.D. Fla. May 20, 2019) (same).  See also Malletier v. Individuals, P'ship, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same). Accord Gucci Am., Inc. v. The Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60397-WPD (S.D. Fla. July 8, 2020) (same); adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns, 19-cv-63109-RKA (Mar. 31, 2020) (same); Chanel, Inc. v. aozhu9284, Case No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); MPL Communications Limited v. 1230h0h Store, Case No. 19-cv-62891-BB (S.D. Fla. Feb. 12, 2020) (same).

the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c).
Accordingly, judgment on Count II should be limited to the amount awarded pursuant to Count I
and entry of the requested equitable relief.

### 4. Damages as to Count III for Cybersquatting.

Plaintiffs' Amended Complaint further sets forth a cause of action for
cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15
U.S.C. §1125(d).  As admitted by default, and established by the evidence submitted herewith,
Defendant adidasschweiz.us ("Defendant Number 102") has acted with the bad faith intent to
profit from Plaintiffs' Marks and the goodwill associated with those trademarks by registering its
corresponding Subject Domain Name, (the "Cybersquatted Subject Domain Name") which is
identical, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks. (Compl. ¶¶ 36-
42, 66-69.)  The Cybersquatted Subject Domain Name incorporates one or more of Plaintiffs'
trademarks in its entirety surrounded by descriptive or generic terms, rendering the domain name
nearly identical to at least one of Plaintiffs' trademarks. Even minor variations to a plaintiff's
mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V
Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy
of another's famous and distinctive trademark for use as a domain name creates a presumption of
confusion among Internet users as a matter of law."); DaimlerChrysler v. The Net Inc., 388 F.3d
201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a
trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name]
is used, approved, or permitted' by the mark holder.").  Furthermore, it is indisputable that
Plaintiffs' Marks are famous and distinctive. Plaintiffs' genuine goods are among the best-selling
sportswear products in the world, and Plaintiffs' Marks enjoy widespread recognition and are
prominent in the minds of the consuming public. (Gutierrez Decl. in Support of TRO ¶¶ 6-9.)

As to the issue of bad faith, the ACPA lists nine factors for courts to consider in
determining whether a domain name has been registered or used in "bad faith" with an intent to
profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. §
1125(d)(1)(B)(i); Taverna Opa Trademark Corp., 2010 WL 1838384, at *2.  The nine factors are
not meant to be exclusive and the Court may consider the context of the matter in making a
determination of bad faith.  See Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1347. An
examination of the relevant bad faith factors compels the conclusion that Defendant Number

102's registration and use of the Cybersquatted Subject Domain Name violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendant Number 102 has no rights in Plaintiffs' Marks, and Defendant Number 102 has never used Plaintiffs' Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in Plaintiffs' favor.  As discussed above, Defendant Number 102 has clearly intentionally incorporated at least one of Plaintiffs' Marks in its domain name to divert consumers looking for Plaintiffs' Internet websites to its own Internet website for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of Defendant Number 102's Internet website and mistakenly believe the website is endorsed by and/or affiliated with Plaintiffs. Clearly, Defendant Number 102's registration of the Cybersquatted Subject Domain Name, in order to promote and/or offer for sale counterfeit and infringing versions of Plaintiffs' branded goods, knowing the domain name is identical or confusingly similar to Plaintiffs' indisputably famous and distinctive marks ensures a likelihood of confusion among consumers. See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(c); Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1356.  Accordingly, Plaintiffs are entitled to the transfer and ownership of the Cybersquatted Subject Domain Name because it is confusingly similar to their trademarks.  See id. at 663. Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.  15 U.S.C. § 1117(d).  Plaintiffs elect statutory damages and submit that in view of Defendant Number 102's intentional, wrongful behavior, an award in the amount of $10,000.00 against Defendant Number 102 for its Cybersquatted Subject Domain Name, adidasschweiz.us, would be just.  See Taverna Opa Trademark Corp., 2010 WL 1838384, at *3 (awarding $10,000.00 in statutory damages for the infringing domain name at issue); Chanel v.

7creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Apr. 6, 2020) (awarding $10,000.00 in statutory damages for each infringing domain name at issue).

   **5.   Damages as to Count IV for Common Law Unfair Competition and Count V for Common Law Trademark Infringement.**

   Plaintiffs' Amended Complaint also sets forth a cause of action under Florida's common law of unfair competition (Count IV) and Florida's common law trademark infringement (Count V). Plaintiffs submit that judgment on Count IV and Count V should also be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   <u>CONCLUSION</u>

   For the foregoing reasons, Plaintiffs respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated:  October 5, 2020.                    Respectfully submitted,

                                           STEPHEN M. GAFFIGAN, P.A.

                                           By: **<u>Virgilio Gigante</u>**
                                           Stephen M. Gaffigan (Fla. Bar No. 025844)
                                           Virgilio Gigante (Fla. Bar No. 082635)
                                           T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                                           401 East Las Olas Blvd., #130-453
                                           Ft. Lauderdale, Florida 33301
                                           Telephone: (954) 767-4819
                                           E-mail: Stephen@smgpa.net
                                           E-mail: Leo@smgpa.net
                                           E-mail: Raquel@smgpa.net

                                           Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, STORE**
**NUMBER, PAYMENT ACCOUNT, ASIN, AND ADDITIONAL EMAIL ADDRESS**

| Defendant Number | Defendant / Seller ID / Subject Domain Name | Store Number / Merchant ID / Payment Account | adidas Branded Item ASIN / Additional Email Address |
|---|---|---|---|
| 1 | Customotop | A1NFYNHXNJDB1K | B082XYFF3Z B084X3YZNT B084G51JWF |
| 2 | qin shao | A3EY2DO7P5OTB3 | B081SMDVVS |
| 3 | sa xi | A3B3KLB8YMURJB | B081FCJP5Y |
| 4 | shiguoming | A1N0LINGKCUXLQ | B07V4CSYDZ |
| 6 | all_star_jerseys | 21215565 | |
| 8 | Best2018jersey | 21056969 | |
| 9 | buling_buling_store | 21025719 | |
| 11 | Cn-sell a/k/a Splendid Jerseys Factory | 14498598 | |
| 13 | Ericshu620 | 21454341 | |
| 14 | Fan_sport | 20827203 | |
| 16 | Hdkoco a/k/a Hdkoco Hockey | 20655613 | |
| 17 | Hedman | 21383114 | |
| 18 | isport_jersey | 21043057 | |
| 22 | Jerseydhgatecom | 21129766 | |
| 26 | Laine | 21130460 | |
| 27 | Linshuai a/k/a Binnington | 21182988 | |
| 28 | michaelwen2008 | 13687858 | |
| 31 | outdoorai | 21254813 | |
| 32 | Pigchen | 21178115 | |
| 35 | Subban | 21378247 | |
| 36 | Superjerseyfactory a/k/a Superjersey Factory | 20822486 | |
| 38 | Tukameng2016 | 20305377 | |
| 39 | Waller | 20917114 | |
| 41 | yaxing68 | 21462065 | |
| 43 | BAODAN01 | 5ba9ca6f8b2c370351d94b45 | |
| 45 | Chinese aloe | 5dee118028fc7103012c5188 | |
| 46 | CL store 1 | 5cfdad3228fc710301fb6c3e | |
| 47 | CONGYOUHUAGE | 5b2a1bf18b4513036c1183a4 | |
| 50 | LL STORE | 5cfdad6636b54d03019cb8db | |
| 53 | Offline Store | 5cc812501436d403016c675e | |
| 58 | threethreeL | 5da328538b2c37030168cb30 | |
| 60 | YIGE | 5b2a1db08b4513036c11b162 | |
| 61 | beautylish | 584a44eb15914566e93af27d | |
| 62 | bin33asdf | 5e674283813c3f10a1b9f654 | |

| 63 | buxinqiuhai | 5dfb429b6d5d4a07e8cbc915 | |
| 64 | buybuyingoodday | 58294f5f9bef6e6b82e9330a | |
| 65 | bybygotheway | 582518e86a4a7b1cd483cda6 | |
| 66 | DC Supermarket | 58c943acd5dbcd51146d183a | |
| 67 | dinggev62v | 5e0c78956a4343fd163c6f35 | |
| 68 | dingxuefei | 58ca683c58cdc76f6ef34c48 | |
| 69 | fuyuangyingli | 5d9559787137800bc6bf2a99 | |
| 70 | gryuowe526e | 5d9948fb0aed7f48478a714d | |
| 71 | guidaohaopeng | 5e3a4f3ff8c5fd38b64a9985 | |
| 72 | hongyundastore | 58466d7dc0874068ce1eb21a | |
| 73 | Huaxieyoukai | 5e44cf1b29e78671a9d3fff0 | |
| 74 | Jason Bald | 58b4176f2a5b2e51ba93cab3 | |
| 75 | linduifenqin | 5d95505c48ea3c2fdf953e70 | |
| 76 | Meiteyfull Bags | 5e05ea4da3e1180b6c8ae828 | |
| 77 | nmbisi | 5d3a6301cf861a4b1b1e7b47 | |
| 78 | ponuyujh | 5e1d3c50ab95e80668b0c26b | |
| 79 | shinereiovnf | 5e06e9a7a577532fb2033039 | |
| 80 | Spriny Muzi | 5e64ad322724a8382cdc4a03 | |
| 81 | studentsen | 5de8cc4a71a1943c42ee30e0 | |
| 82 | usaexpresss | 58144b3829b5f31953f36616 | |
| 83 | wankaifiyang | 5d9560b6c095e14e6a49015b | |
| 84 | weuquantuiqi | 5e06f7a529e786558aa26cc5 | |
| 85 | whatsyourdream | 589400bc879ae5526abb2bba | |
| 86 | whqlytlyx | 5b83ff986cff994088ffec64 | |
| 87 | xdyo60 | 5d5bf44f560eca392e849fd1 | |
| 88 | Xiaodouzai Zaibao | 5e364756e489d51000966726 | |
| 89 | Yogo 's Chinese style grocery store | 59646d3537635d6dc5cd6e35 | |
| 90 | zhangzhongliang | 5e06f55c310ce93044889c60 | |
| 91 | zuixiangqiqing | 5e082159a577535c470330d4 | |
| 92 | zvq4l98f | 5d4ecaa18388976300e72e39 | |
| 93 | babyyu29 | babyyu2018@outlook.com | |
| 94 | dhp_59 | pvdfl1@163.com | |
| 96 | kauee01 | Transaction ID: 90909024GE319862A | |
| 97 | romeholiday2005 | jiandong20170821@outlook.com | |
| 98 | sambede-brand | sweetpetloveyou@outlook.com | |
| 99 | storefor.you | elhachimisoukaina20@gmail.com | |
| 100 | swexb778 a/k/a masked778 | swexbaa@163.com | |
| 101 | 2019sneakersrelease.com | rompcont1592@mail.com | Customerservice@onlinecustomerservice.xyz |
| 102 | adidasschweiz.us | junfengchen66@126.com | onlinetopcustomerservice@gmail.com |

| 103 | artemisoutlet.cn | mariadelaa@163.com<br>ximandylly@outlook.com<br>bailanlike@sina.com | artemisoutletsneaker@gmail.com |
| 104 | buyitoutlet.com | boosticboostic@gmail.com | info@buyitoutlet.com<br>khnpnd@gmail.com |
| 104 | yeezybreezy.com | katemeadow420@gmail.com | info@yeezybreezy.com<br>yeezy.su@gmail.com<br>podopozhko@gmail.com |
| 104 | sneakerhead.su | boosticboostic@gmail.com | info@sneakerhead.su |
| 104 | xstock.shop | boosticboostic@gmail.com<br>katemeadow420@gmail.com | yeezy.su@gmail.com<br>info@yeezy.direct |
| 105 | elitejerseydeals.com | lowe7bm4kl4@mail.com | elitejerseydeals@umailservice.com<br>musosnot@mail.ru |
| 105 | elitejerseysvipwholesale.com | lowe7bm4kl4@mail.com | service@onlineservice.com<br>elitejerseysvipwholesale@umailservice.com<br>pxljd1@sina.com |
| 105 | elitefanaticshop.com | lowe7bm4kl4@mail.com | jerseysnewstyle@gmail.com<br>elitefanaticshop@umailservice.com<br>service@onlineservice.com |
| 106 | vipjerseydeals.com | sophroniaje7g6z@mail.com | service@onlineservice.com<br>vipjerseydeals@umailservice.com<br>melsidagon@mail.ru |
| 106 | elitejerseyvip.com | sophroniaje7g6z@mail.com | service@onlineservice.com |
| 106 | officialonlineshop.co | sophroniaje7g6z@mail.com | officialonlineshop@umailservice.com<br>service@onlineservice.com |
| 107 | elitejerseywholesale.com | ottorayloq@mail.com<br>blackkjslaser@hotmail.com | elitejerseywholesale@umailservice.com<br>service@onlineservice.com<br>bnztn9@sina.com |
| 108 | hotjerseysale.com | elaaltmanqf6@mail.com | |
| 109 | jerseyspromart.com | CianaouEdisonez@yahoo.com | jerseyspromart@umailservice.com<br>elitejerseysboutique@gmail.com |
| 110 | kicknove.com | 1054903493@qq.com<br>chenxiaoqing0410@163.com | helloshoes88@gmail.com |
| 111 | kicksvogue.me | 1500307688@qq.com | kicksvogue88@gmail.com |
| 112 | rabonajersey.com | rbnpayment1234@gmail.com | rabonajersey@gmail.com |
| 113 | Sneakerpop.org | 3447739653@qq.com | buypopsneakers@gmail.com |

| 115 | umass1968.com | MichaelClarkdrL@yahoo.com | Customerservice@after-saleservice.com |
| 117 | yecheil.com | xileiwanxing@outlook.com | yecheilsale@gmail.com |
| 118 | yesyeezy.cn | lixia8410@hotmail.com jakejay23@163.com chenyong652a@sina.com | worldsneaker1@gmail.com slowdown88@163.com |
| 119 | yzystatic.org | 330390183@qq.com | yezzystatic@gmail.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 5, 2020, a true copy of the foregoing was served upon Defendants via the e-mail addresses at which Defendants were served, and by posting copies of the same on Plaintiffs' designated service notice website appearing at the URL http://servingnotice.com/Dp23j11/index.html.

**Virgilio Gigante**
Virgilio Gigante